UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BENJAMIN C. WILCOX, SR., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:07-cv-0365 |
| | § | |
| MICHAEL J. ASTRUE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Cross-Motions for Summary Judgment filed by Plaintiff and Defendant. For the following reasons, Defendant's Motion, Docket No. 12, is **DENIED** and Plaintiff's Motion, Docket No. 9, is **GRANTED**. This case is **REMANDED** for reconsideration by the ALJ not inconsistent with this order.

### I. BACKGROUND

Plaintiff filed applications for Social Security Disability Benefits and Supplemental Security income on August 30, 2004. His applications were denied initially and on reconsideration. A hearing was conducted on November 8, 2006, and Plaintiff appeared, represented by counsel. In a November 21, 2006 decision, the Administrative Law Judge (ALJ) found that Plaintiff retains the ability to perform light work and is therefore not disabled. The Appeals Council declined to set aside the ALJ's decision on June 1, 2007.

Plaintiff alleges that he is unable to work due to symptoms arising from diabetes and diabetic neuropathy, hypertension, coronary artery disease, chronic obstructive pulmonary disease, osteoarthritis of the knee, and depression.[1] These symptoms include, but are not limited to, ankle, foot and knee pain and weakness resulting in falls, difficulty walking, fatigue, and

---

[1] Plaintiff has also suffered a stroke. (Tr. 367.)

1

occasional blackouts. Plaintiff previously worked as a heavy equipment operator and construction foreman for more than twenty years.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2007 and was engaged in substantial gainful activity through October 2004.[2] (Tr. 20.) The ALJ recognized that Plaintiff had severe impairments of diabetes mellitus, hypertension, coronary artery disease, depression, chronic obstructive pulmonary disease, a history of alcohol abuse and a history of osteoarthritis of the left knee, but did not find that his impairments met a listing. (Tr. 20-21.) With regard to Plaintiff's residual functional capacity, the ALJ determined:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently with a sit/stand option and an ability to walk 4 hours out of an 8-hour workday. The claimant has a limited ability to push and pull with the lower extremity. His gross and fine dexterity is unlimited except for minimal limitation in right hand grip strength. The claimant should not be required to climb stairs, ladders, scaffolds or ropes and should avoid heights and running. He should have limited exposure to dust, fumes, gases and chemicals, despite the fact that he voluntarily smokes. Mentally, the claimant is able to get along with others, concentrate and perform detailed tasks, understand detailed instructions and adapt and respond to workplace changes and supervision.

(Tr. 21.) As a result, the ALJ found that Plaintiff is unable to perform any past relevant work. The ALJ found that Plaintiff had turned 50 on October 20, 2004, and would therefore be defined as an individual closely approaching advanced age as of that date. (Tr. 26.) He has a high school education and is able to communicate in English. (*Id.*) The ALJ consulted a Vocational Expert (VE) and determined that Plaintiff has acquired work skills from past relevant work including driving skills, operating equipment skills, and the ability to supervise others. (Tr. 26.) Finally,

---

[2] The ALJ declares in the same paragraph that Plaintiff "has not engaged in substantial gainful activity since December 1, 2004, the date he testified he stopped working." (Tr. 20.) The claimant's testimony was that he worked through October 2004, not December 1, 2004. (Tr. 365-66.)

2

the ALJ, after consulting with the VE, determined that Plaintiff is able to perform light work (though less than the full range) and is not disabled.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

### B. Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C.  Legal Standard

A disability claimant bears the initial burden of proving that she is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before December 31, 2005.

The Court evaluates a disability claim via a five-step process, as follows:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). The claimant bears the burden of proof on the first four steps, and then the burden shifts to the

Commissioner to establish the claimant is capable of performing work in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

### D.   Residual Functional Capacity Assessment

Plaintiff contends that the ALJ's residual functional capacity (RFC) assessment is inconsistent with the finding that Plaintiff is capable of performing a reduced range of light work. Plaintiff argues that his principal functional limitation is the inability to stand or walk for extended periods of time due to pain, numbness, and tingling in his lower extremities, a tendency for his knee to give out, and repeated blackouts. The ALJ found, however, that Plaintiff's RFC includes "an ability to walk 4 hours out of an 8-hour workday." (Tr. 21.) According to Plaintiff, even if this finding were supported by substantial evidence, it still would be insufficient to support a finding that Plaintiff can perform light work.

Social Security regulations classify jobs in one of five categories, depending on the physical exertion they require: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 416.967. The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.*; 20 C.F.R. § 404.1567(b). Social Security Ruling 83-10 clarifies: "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10; *see also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (observing that the Social Security Administration's rulings are not binding on the court, but noting that the

Fifth Circuit has "frequently relied upon the rulings in evaluating ALJ's decisions"). Plaintiff argues that the ALJ's determination that he can walk 4 hours out of an 8-hour workday with a sit/stand option is insufficient to meet the criteria for light work because, according to SSR-83-10, light work requires a claimant to be able to stand or walk for approximately *six* hours in an 8-hour workday. According to Plaintiff, because the ALJ found he can only walk four hours, he is only able to perform sedentary work. Given the ALJ's other findings and the fact that he is an individual approaching advanced age, if Plaintiff's RFC would allow Plaintiff to perform only sedentary work, the Medical-Vocational Guidelines Rule 201.14 would dictate a finding that Plaintiff is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Defendant responds, first, that the ALJ's finding that Plaintiff can walk for only four hours is a typographical error. Defendant points out that when posing a hypothetical question to the VE, the ALJ stated "walk four to eight." (Tr. 386.) There is nothing in the text of the decision to suggest that the ALJ's unambiguous and clearly worded finding that "the claimant has . . . an ability to walk 4 hours out of an 8-hour workday" contains any typographical error.

Defendant next contends that even if the ALJ did find that Plaintiff can walk for only four hours per 8-hour workday, his decision is not erroneous. Specifically, Defendant argues that the ALJ did not find that Plaintiff could perform the "full" range of light work, but instead found that Plaintiff could perform a "limited" range of light work. (Tr. 27 (noting that the "claimant's additional limitations do not allow the claimant to perform the full range of light work," but finding that claimant is nevertheless "not disabled.").) Defendant maintains that the regulatory requirement that a claimant be able to engage in a "good deal of walking" can be met if a claimant can walk for four hours.[3]

---

[3] In support of this argument, Defendant points to *Hillman v. Barnhart*, an unpublished case in which the Fifth Circuit upheld a an ALJ's finding that a claimant could perform a limited range of light work even though the ALJ

6

The Court cannot agree with Plaintiff's response that a claimant's ability to perform at a particular physical exertion level can only be "reduced" by his or her "non-exertional" limitations. *See* SSR 83-14. Although non-exertional limitations may also reduce the potential occupational base at any given strength level, SSR 83-12 makes clear that it is possible for an ALJ to find that an individual is able to perform a limited range of jobs at a particular strength level based on exertional restrictions alone.[4] SSR 83-12 recognizes that "[i]n some instances, an individual can do a little more or less than the exertion specified for a particular range of work." SSR 83-12 at *2 (noting as an example: "the person is considered to be physically capable of meeting the exertional demands of light work except that he or she can lift no more than 15 pounds at a time rather than 20 pounds, or he or she can fully meet the exertional demands of light work and can also perform part of the greater lifting requirement of medium work."). SSR 83-12 goes on to say:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access [sic] its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious.

*Id.* at *2. Furthermore, where, as here, "an exertional level falls between two rules which direct opposite conclusions, i.e. 'not disabled' at the higher exertion level and 'disabled' at the lower exertional level," the ALJ is directed to consider the following:

---

found that he could walk for only four hours out of an 8-hour workday. 170 Fed. Appx. 909, 913-14 (5th Cir. 2006). The court's conclusion in *Hillman*, however, does not include any analysis of why or how the ability to walk four hours meets the requirements of SSR 83-10.
[4] Neither party cites SSR 83-12 in briefing, but the ALJ did reference the Ruling in his decision.

    a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

    b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

    c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

*Id.* at *2-*3.

    It is not clear whether the ALJ thought that the ability to walk for four hours only slightly reduced Plaintiff's exertional capacity or whether it fell somewhere "'in the middle' in terms of the regulatory criteria for exertional ranges of work."[5] The ALJ did, however, consult a Vocational Expert when determining whether jobs remained available to Plaintiff, as required when the exertional limitations are somewhere in the middle of the exertional ranges. In the hypothetical question posed to the VE, the ALJ stated, among other restrictions, that Plaintiff could "walk four to eight," and the VE responded that Plaintiff could perform jobs such as chauffer, delivery car driver, and retail lot attendant. (Tr. 27, 387.) There is no evidence in the record regarding how many of these jobs would be available in the local or national economy.[6]

    Some circuits have found that an ALJ is entitled to rely on a VE's identification of a few sample occupations when determining whether a significant number of jobs remain available to the claimant as required by SSR 83-12, but in those cases, there was evidence in the record to

---

[5] The Court doubts, however, that a 2-hour a day decrease in the ability to walk would be considered only a slight reduction in exertional capacity.

[6] The VE did provide these numbers for other sedentary jobs proposed in response to the ALJ's second hypothetical question. (Tr. 389.) He did not provide such testimony regarding the light work jobs. Nor did the ALJ set forth in his opinion how many of these jobs are available, and instead stated only that "the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the regional and national economy." (Tr. 27.)

support the actual number of jobs available.[7] *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 205, 209-10 (3d Cir. 2003) ("[W]e shall not interpret SSR 83-12 to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform."); *Casey v. Barnhart*, 76 Fed. Appx. 908, 911 (10th Cir. 2003) (unpublished) ("The ALJ also elicited VE testimony to the effect that two light-work jobs existed in the economy in significant numbers which could be performed by an individual with Mr. Casey's RFC."); *Thomas v. Barnhart*, 278 F.3d 947, 960-61 (noting that "when a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with claimant's profile could perform substantial gainful work in the economy" and finding "Because the VE testified that Ms. Thomas could perform one of 622,000 jobs in the national economy and 1,300 jobs in Oregon, substantial evidence supports the ALJ's finding that Ms. Thomas was 'not disabled.'") (9th Cir. 2002). At least one district court in this circuit reversed and remanded an ALJ's finding of not disabled where the claimant could not perform the full range of light work, "[b]ecause the vocational expert did not determine whether there existed a significant base number of jobs that the plaintiff could perform." *Martin v. Halter*, 2001 WL 1524367, at *2 (N.D. Miss. 2001). Given that the extent of the remaining occupational base is critical to the ALJ's determination under SSR 83-12, the Court does not find the VE's failure to provide testimony as to the number of light work jobs available to be harmless. The Court will, therefore, reverse and remand for further consideration on this point.

### E. Blackouts and Hypothetical Question

---

[7] The Fifth Circuit does not appear to have addressed this question.

The Court finds that the ALJ has articulated credible and plausible reasons for finding that the intensity, persistence, and limiting effects of some of Plaintiff's subjective complaints were not entirely credible. (Tr. 22.) The Court is concerned, however, about the ALJ's finding regarding Plaintiff's blackouts.

When discussing Plaintiff's "subjective complaints," the ALJ noted that "the medical record fails to support the claimant's blackouts occur at a frequency that would preclude all work activity." (Tr. 24.) The ALJ then discussed evidence of two syncopal episodes present in the record and declared: "This is related to non-compliance with his medication regimen." (Tr. 24.) The ALJ appears, therefore, to accept that Plaintiff's medical condition does at least sometimes lead to blackouts. Although there is evidence in the record that Plaintiff has, at times, been non-compliant with medication, there is nothing in the record regarding the two episodes cited by the ALJ to indicate that Plaintiff's was not taking his medications at the time the blackouts occurred. (Tr. 245, 235.) Indeed, Plaintiff's treating physician observed that Plaintiff's diabetes does not respond to insulin, that they are "constantly adjusting the insulin dose," and that Plaintiff has "occasional hypoglycemia" due to insulin. (Tr. 273.) Thus, to the extent the ALJ determined that Plaintiff's blackouts were not disabling because they occurred only as a result of non-compliance with medications, that finding is not supported by substantial evidence.

Even if Plaintiff's blackouts would not themselves preclude all work activity, it would certainly seem that even the occasional blackout might have serious implications for the jobs that the ALJ and VE found that Plaintiff could perform despite his limitations, all of which involve extensive driving.[8] (Tr. 27, 387 (identifying delivery car driver, retail lot attendant, and chauffer as the jobs Plaintiff could perform).) The ALJ did not include even occasional blackouts in his

---

[8] When the VE described the "retail lot attendant" job, he explained it was a "lot attendant who pay for people to park the cars" [sic]. (Tr. 387.)

10

hypothetical question to the VE. It does not appear, therefore, that the hypothetical question "incorporate[d] reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The ALJ's "determination of non-disability based on such a defective question cannot stand." *Id.*

### F.  Evaluation of Treating Physician and Non-Examining Physician Opinions

Plaintiff also alleges that Defendant failed to give sufficient weight to the opinions of his treating physician, and instead gave improper weight to the opinions of non-examining experts. Plaintiff specifically contends that the ALJ erroneously rejected Dr. Bell-Gray's opinion that plaintiff is unable to stand or walk for more than one hour a day.

The first step in evaluating a treating physician's medical opinion is to determine whether, based on the record, it should receive controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). Those factors are: 1) length of the treatment relationship and the frequency of the examination; 2) nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors. 20 C.F.R. § 404.1527(d)(2); *see also Newton*, 209 F.3d at 453. Even if a treating physician's opinion is not

given controlling weight, it should receive due weight, and often even "the greatest weight." *Newton*, 209 F.3d at 456 (quoting Social Security Ruling 96-2p, 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)); *see also Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) (a physician's view is evidence "entitled to great weight."). The Fifth Circuit has held that an ALJ may decrease the weight afforded to the opinions of treating physicians only if there is good cause to do so. *Leggett v. Chater*, 67 F.3d 558, 565-66 (5th Cir. 1995). According to the *Leggett* court, good cause justifies "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." *Id.* at 566 (internal quotation marks omitted).

In his decision, the ALJ stated that he would give the assessments of Plaintiff's treating physician, Dr. Anika Bell-Gray, "very little weight." (Tr. 26.) The ALJ appears to have considered most of the factors set forth in 20 C.F.R. § 404.1527(d)(2), though he does not mention the frequency of the treatment relationship (Plaintiff saw Dr. Bell-Gray every month for approximately a year and a half prior to the hearing date). The ALJ focuses primarily on the supportability and consistency factors. Specifically, the ALJ appears to believe that some of Dr. Bell-Gray's opinions are not supported by medical evidence, are contradicted by other record evidence, and that her own opinions are inconsistent.

As to Dr. Bell-Gray's opinion that Plaintiff cannot stand or walk more than one hour in an 8-hour workday, the ALJ argued that Dr. Bell-Gray provided "no supporting medical evidence or opinion" as to Plaintiff's conditions prior to 2005. (Tr. 25.) The ALJ criticizes Dr. Bell-Gray for stating that Plaintiff's diabetes symptoms and limitations existed "at least since 2003," given that Dr. Bell-Gray first began treating Plaintiff in 2005. (Tr. 25.) The Court agrees that Dr. Bell-Gray could not have had personal knowledge of Plaintiff's limitations until she

began treating him. The ALJ does not appear to question, however, that Plaintiff had been diagnosed with diabetes prior to 2003, something that is clearly supported in other medical records. (Tr. 104 (diagnosing Plaintiff with diabetes in April 2002).) Arguing that Dr. Bell-Gray's findings regarding Plaintiff's standing and walking limitations were inconsistent with the objective medical evidence, the ALJ pointed to a September 8, 2005 radiological finding that Plaintiff's knee did not reveal acute abnormalities and that he had good alignment of the knee. (Tr. 25; Tr. 258.) The ALJ also pointed to November 2005 progress notes stating that claimant did not have any neurological deficits and a February 27, 2006 observation by Dr. Bell-Gray that Plaintiff's respiratory and cardiovascular examinations were unremarkable. (Tr. 25.) The Court has doubts as to whether these two findings constitute substantial evidence that contradict Dr. Bell-Gray's opinions regarding Plaintiff's ability to walk and stand, particularly in light of other evidence in the record regarding Plaintiff's leg pain and weakness. For example, after examining Plaintiff in March 2005 for the Texas Rehabilitation Commission, Dr. Prakish found that, in addition to diabetes, Plaintiff had osteoarthritis of the left knee joint. Other medical evidence in the record similarly supports a finding that Plaintiff had diminished sensation in the left lower extremity and decreased lower extremity sensation bilaterally. (Tr. 123-24.) Functional capacity evaluation testing performed at the University of Texas Medical Branch also found that Plaintiff was unable to stand for more than an hour.[9] (Tr. 231.) Even if other medical evidence that the ALJ failed to cite when analyzing the weight to give Dr. Bell-Gray's conclusions might constitute substantial evidence that Dr. Bell-Gray's opinions regarding Plaintiff's ability to walk and stand were unsupported, the Court is also concerned by the ALJ's incorrect statement that

---

[9] As part of this testing, Plaintiff was found to have an invalid coefficient of variation related to his right hand grip and to have demonstrated an inappropriate illness behavior with regard to one element of this testing; however, two other pain profiles related to the testing were considered normal. It is not at all clear from the record that the results regarding Plaintiff's tolerance for standing were invalid, and the ALJ did not find that they were. (Tr. 23 (noting only that Plaintiff demonstrated an invalid profile as to grip strength in the right hand).)

Dr. Bell-Gray found Plaintiff's disability was "not permanent or expected to last more than 6 months." (Tr. 25.) In fact, Dr. Bell-Gray found that Plaintiff's condition was expected to last more than six months. (Tr. 286.) The Court is once again unconvinced by Defendant's argument that this finding is simply a typographical error. The Court cannot know how much weight the ALJ gave to this factor when deciding to give "very little weight" to Dr. Bell-Gray's opinion.

The Court ultimately finds that it is a close call whether the ALJ gave proper weight to Dr. Bell-Gray's RFC finding regarding Plaintiff's ability to stand and walk. The Court has already determined that this case must be remanded for further consideration on other grounds, and will not, therefore, reach this question. It does note that the ALJ will be expected to clarify its reasons for rejecting Dr. Bell-Gray's opinions regarding Plaintiff's ability to walk and stand taking into account that Dr. Bell-Gray, in fact, stated that Plaintiff's condition was expected to last more than six months.

### III. CONCLUSION

Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion is **DENIED**. This case is **REMANDED** to the ALJ for further consideration not inconsistent with this opinion.

**IT IS SO ORDERED.**

SIGNED this 27th day of May, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE